IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

REV GROUP, INC.; E-ONE, INC.,                          **OPINION & ORDER**

            Plaintiffs,                          Civ. No. 6:25-cv-02234-AA

       v.

RICHARD KNUTZ,

            Defendant.

_____

AIKEN, District Judge:

Before the Court is a Motion for Preliminary Injunction, ECF No. 8, filed by Plaintiffs REV Group, Inc. and E-ONE, Inc. against Defendant Richard Knutz. Plaintiffs bring claims against Defendant for violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*, breach of contract, and conversion. Plaintiffs requested a hearing on the Motion, but as Defendant has not responded to either the Complaint or the Motion, the Court determined that a hearing was not needed. For the reasons explained below, Plaintiffs' Motion, ECF No. 8, is GRANTED.

## BACKGROUND

Defendant REV Group, Inc. ("REV Group") is a Delaware corporation with principal place of business in Wisconsin. Compl. ¶ 8, ECF No. 1. Its wholly owned subsidiary, E-ONE, Inc. ("E-ONE"), is a Delaware corporation with principal place of

Page 1 – OPINION AND ORDER

business in Florida. *Id.* ¶ 10. REV Group and E-ONE (collectively "Plaintiffs") "design, manufacture, market, distribute, sell, and service emergency response vehicles, as well as a wide range of recreational vehicles." *Id.* ¶ 9. Defendant, former E-ONE employee, Richard Knutz, is a resident of Oregon, with an address of Redmond, Oregon. *Id.* ¶ 11.

Defendant was served with the Complaint and has had an opportunity to respond to Plaintiffs' Complaint, which was filed on December 3, 2025, but failed to do so. *See* ECF No. 1.

Plaintiffs affirm that Defendant joined E-ONE in 2012 and held various roles of increasing responsibility. West Decl. ¶ 5, ECF No. 10. He most recently served as E-ONE's Controller. *Id.* In that role, Defendant "acted as a financial business partner to the Vice President/General Manager[,]" and "maintained responsibilities for the organization's accounting and finance functions, including the implementation and enforcement of financial and accounting policies and procedures, internal controls, and financial presentations and submissions." *Id.* ¶ 6. As part of Defendant's work with E-ONE, Defendant was issued a laptop (the "Laptop"). *Id.* ¶ 10.

Plaintiffs affirm that on November 11, 2025, E-ONE terminated Defendant because (1) he secured "unlawful and unauthorized dual employment with another company, which substantially hindered his job performance;" and (2) he forwarded a spreadsheet titled "Chassis Costs 2026 AOP Round 1.xlsx" (the "Spreadsheet") to a personal email account, in violation of company policy. *Id.* ¶¶ 8, 9. Plaintiffs affirm

Page 2 – OPINION AND ORDER

that the Spreadsheet contains "sensitive business information, including unit-level sales prices, profit margins, and other critical financial and commercial data pertaining to E-ONE's manufactured products." *Id.* ¶ 9.

Plaintiffs affirm that after Defendant was terminated, he failed to return the Laptop and account for the location of the Spreadsheet. *Id.* ¶¶ 10–13. Plaintiffs affirm that the Laptop contains "confidential and proprietary information related to Plaintiffs' business, likely including a wide range of financial data, marketing strategies, product details, and business plans." *Id.* ¶ 15. Plaintiffs made several attempts to secure the return of the Laptop and the Spreadsheet and to obtain from Defendant an accounting as to the Spreadsheet's disposition and whether it had been shared. *Id.* ¶¶ 10–14; Ex. B, ECF No. 10-1 at 9; Ex. C, ECF No. 10-1 at 18. Defendant has not responded to Plaintiffs' requests and is still in possession of the property. *Id.* ¶ 15.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show that (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest. *Id.* at 20. The plaintiff must carry its burden of persuasion by a "clear

showing" of the four *Winter* elements.  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## DISCUSSION

On December 19, 2025, Plaintiffs filed this Motion for Preliminary Injunction to compel the return of the Laptop and secure an accounting of the Spreadsheet's location and use.  *See* Pl. Mot. and Pl. Mem., ECF Nos. 8, 9.  Defendant had notice and opportunity to respond to the Motion but failed to do so.

I.    *Likely Success on the Merits*

Plaintiffs maintain that they are likely to succeed on the merits of their three claims: (1) misappropriation of trade secrets under the DTSA, (2) breach of contract, and (3) conversion.  Pl. Mem. at 7, ECF No. 9.

To obtain preliminary relief, a plaintiff must show a "likelihood of success on the merits."  *Winter*, 555 U.S. at 20.  But a court's decision on preliminary relief is not a ruling on the merits of the claim.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  In considering the likelihood of success on the merits, a court is not strictly bound by the rules of evidence, as the "preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

A.    *Misappropriation of Trade Secrets under DTSA*

Plaintiffs are likely to succeed on the merits of their misappropriation of trade secrets claim.

Page 4 – OPINION AND ORDER

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)).

The DTSA defines a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing

where "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

The unrebutted evidence supports that both the Laptop and the Spreadsheet contain trade secrets. Plaintiffs affirm that "[t]he [L]aptop contains confidential and proprietary information related to Plaintiffs' business, likely including a wide range of financial data, marketing strategies, product details, and business plans." West Decl. ¶ 15. Plaintiffs also affirm that "[t]he [S]preadsheet contained sensitive business information, including unit-level sales prices, profit margins, and other critical financial and commercial data pertaining to E-ONE's manufactured products." *Id.* ¶ 9.

Page 5 – OPINION AND ORDER

The unrebutted evidence supports that Plaintiffs took reasonable measures to keep the Laptop and Spreadsheet information secret. *See United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011) (reasonable secrecy measures include locked rooms, security guards, document destruction protocols, and confidentiality procedures and agreements). Plaintiffs affirm that they "train and advise employees regarding the protection of confidential information and trade secrets, limit the disclosure and use of such information to those with a need to know and to use such information, limit access to trade secrets and confidential information by restricting access to computer networks and devices, and require employees to sign agreements containing confidentiality obligations." West Decl. ¶ 16. Plaintiffs' measures are consistent with reasonable secrecy measures.

The DTSA defines misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5). The unrebutted evidence supports that Defendant misappropriated the Laptop; that he had reason to know that it contained trade secrets; and that, given numerous communications from Plaintiffs, he knew that it was improper to decline to return it. West Decl. ¶¶ 10–14. The evidence also supports that Defendant misappropriated the Spreadsheet by emailing a copy of it to his personal email in violation of company policy. *Id.* ¶ 9. The evidence supports that Defendant had reason to know that the Spreadsheet contained trade secrets, that, given numerous requests from Plaintiffs, he knew it was improper to decline to

Page 6 – OPINION AND ORDER

return the Spreadsheet and improper to decline to account for the location and use of the Spreadsheet, including whether he had shared it with others. *Id.* ¶¶ 10–14.

Finally, the unrebutted evidence supports that Defendant's misappropriations threaten damage to Plaintiffs by harming their competitive advantage. *Id.* ¶¶ 16–17.

B.    *Breach of Contract*

Plaintiffs are likely to succeed on the merits of their breach of contract claim.

In Oregon, to prevail on a breach of contract claim, a plaintiff must show (1) the existence of a contract; (2) the relevant terms of the contract; (3) the plaintiff's full performance and lack of breach; and (4) the defendant's breach that results in damage. *Miller v. Olsen*, No. 3:15-CV-00571-AC, 2016 WL 4154936, at *4 (D. Or. Aug. 4, 2016), *aff'd*, 724 F. App'x 625 (9th Cir. 2018) (citing *Slover v. Oregon State Bd. Of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996)).

The unrebutted evidence supports the existence of a contract between Plaintiffs and Defendant. Plaintiffs affirm that on January 9, 2020, "in connection with [Defendant's] employment, and in exchange for his access to the Company's confidential and proprietary business information," Defendant executed an agreement titled "Non-Compete, Customer and Employee Non-Solicitation, and Confidentiality Agreement" (the "Agreement*")*. West Decl. ¶ 7; Ex. A, the Agreement, ECF No. 10 at 7.

The relevant terms of the Agreement provide:

> At all times during and after Employee's employment, Employee will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Confidential and Proprietary Information[.]

Page 7 – OPINION AND ORDER

Agreement, § 3(a) Non-Disclosure of Confidential and Proprietary Information.

The Agreement also provides:

> Upon termination of Employee's employment with the Company, or upon the Company's earlier request, Employee will promptly (i) deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material (whether in hard copy, digitally stored, or in any other format or medium) containing or disclosing any Confidential and Proprietary Information of the Company, and (ii) return all Company property issued to Employee or otherwise in Employee's possession or control, including, without limitation, computers and computer equipment, phones and other mobile devices, and digital storage devices.

Agreement § 3(c) Return of Company Documents.

Finally, there is no evidence that Plaintiffs failed to fully perform or that they breached the Agreement. And the unrebutted evidence, recounted above, supports that Defendant breached the Agreement.

C.    *Conversion*

Plaintiffs are likely to succeed on the merits of their conversion claim.

In Oregon, to succeed on a conversion claim, a plaintiff must show "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Kadyk v. Long*, No. 3:11-cv-01312-AC, 2013 WL 2550742, at *6 (D. Or. May 17, 2013).

The unrebutted evidence supports that Defendant has declined to return the Laptop and has declined to disclose the location and use of the Spreadsheet and that

Page 8 – OPINION AND ORDER

the property contains trade secrets that could harm the company if disclosed to competitors. This factor favors Plaintiffs.

In sum, Plaintiffs are likely to prevail on the merits of all three claims. This factor favors Plaintiffs.

## II.    *Irreparable Harm*

"A plaintiff seeking preliminary relief must 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (quoting *Winter*, 555 U.S. at 22). "A threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief if the plaintiff 'is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 22).

Plaintiffs contend that "[b]ecause Knutz continues to retain the confidential and trade-secret materials and refuses to return them, there is an imminent risk of unauthorized use or disclosure that would permanently destroy their secrecy and competitive value—harm that cannot be remedied by money damages." Pl. Mem. at 11. The unrebutted evidence, recounted above, supports that Plaintiffs are likely to suffer irreparable harm from the unauthorized use or disclosure of their trade secrets. This factor favors Plaintiffs.

## III.    *Balance of Equities*

Plaintiffs seek to preserve the status quo by preventing Defendant from disclosing their trade secrets and confidential information. Pl. Mem. at 12. Plaintiffs

Page 9 – OPINION AND ORDER

contend that Defendant will suffer no harm as Plaintiffs simply ask for the return of their property. *Id.*; *see Redapt Inc. v. Parker*, No. 2:20-cv-00862-JRC, 2020 WL 3128859, at *5 (W.D. Wash. June 11, 2020) (finding no harm to defendant in preventing him "from distributing or possessing [confidential information] or destroying evidence material to this matter in the brief period covered by the TRO"); *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (defendant suffers no undue hardship when required only to refrain from improper conduct under the parties' agreement); *Dish Network LLC v. Ramirez*, No. 15–CV–04712–BLF, 2016 WL 3092184, at *7 (N.D. Cal. June 2, 2016) (balance of hardships tips in favor of plaintiff seeking injunction when it would "do no more than require Defendant to comply with federal and state . . . laws"). This factor favors Plaintiffs.

IV.    *Public Interest*

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931–32 (9th Cir. 2003) (internal citation and quotation marks omitted). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

Plaintiffs seek to "uphold[] the law and contracts, and hav[e] parties abide by their legal duties." *Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1229 (D. Or. 2016). Here, "the public interest weighs in favor of holding the parties to their contractual obligations, preventing confusion in the marketplace, and

promoting competition in product development." *Commure, Inc. v. Canopy Works, Inc.,* 792 F. Supp. 3d 971, 982 (N.D. Cal. 2025). This factor also favors Plaintiffs.

In sum, all factors, supported by the unrebutted evidence, favor Plaintiffs. Accordingly, Plaintiffs are entitled to the requested preliminary relief.

## CONCLUSION

For the above reasons:

1. Plaintiffs' Motion for Preliminary Injunction, ECF No. 8, is GRANTED.

2. Within 24 hours of this Order, Defendant shall ship the Laptop to Plaintiffs via overnight courier delivery and immediately provide counsel for Plaintiffs with tracking information for the same;

3. Defendant shall not use or disclose any confidential or proprietary information belonging to or originating from Plaintiffs ("Plaintiffs' Information");

4. Within 48 hours of this Order, Defendant shall provide counsel for Plaintiffs a sworn accounting of any Plaintiffs' Information that has been within his possession, custody, or control since November 11, 2025, including the identification of the location of the same;

5. Within 48 hours of this Order, Defendant shall provide counsel for Plaintiffs a sworn accounting of all disclosures, transmittals, copying, or other transfers he has made of any of Plaintiffs' Information to any third-party or location since November 11, 2025;

6. Within 14 days of this Order, Plaintiffs shall file a status report with the Court.

It is so ORDERED and DATED this ___23rd___ day of March 2026.


 /s/Ann Aiken
ANN AIKEN
United States District Judge


Page 11 – OPINION AND ORDER